U.S. President Donald Trump visited Washington, D.C. on Monday, June 20, to discuss the U.S.-U.S. relationship. The U.S.-U.S. relationship is an important part of the U.S.-U.S. relationship. The U.S.-U.S. relationship is an important part of the U.S.-U.S. relationship. The next case is Nicholas Heinemann v. United States, 2017-2066, Mr. Bridge. Is it Heinemann or Hinman?  Is it Heinemann or Hinman? Hinman. May it please the court. This is an action for earned but unpaid retention pay by Mr. Hinman, a VA police officer at Heinz VA. That's in Heinz, Illinois. A couple of facts, short ones are relevant. Mr. Hinman became LEO, or a law enforcement officer at Heinz, January 3, 2010. Now at the time of his hiring in 2010 and through the period of his employment, the retention incentive program at the Heinz provided a 10% retention. But he needs a statute if he's to recover in the claims court. What statute are you relying on? We're looking at the statute which would be 5754 and 5 U.S.C. 5305. 5754 says may, so that's permissive. It is indeed the language of a permissive statute. However, the case law looking at these particular statutes is fairly clear. And that is although a language or statute has perhaps permissive parts of it, where the conditions precedent are already accomplished, there is no left, there's no discretion left. Let me say it this way. I'm not sure, but your problem is that the handbook requires a specific determination that it's necessary and appropriate to make these retention payments. And the memorandum authorizing those payments came into effect on November 4, 2011. And I don't understand how under those circumstances he could get the retention pay before it was authorized. And he started getting it immediately the next pay period after the authorization. Right. The government in this case indicated that they didn't have any evidence of a group incentive pay before 2011. And at the trial level, I filed a supplemental document showing that indeed incentive pay began as early as 2008, not 2011. For some groups or some people, that may have been true. But here, the thing that's dated or signed on November 4, 2011, is the first authorization that applies to this person. You're familiar with the document, right? Yes, I am. Now, I think that question may be answered by the director's findings in this case when he was asked for the payment. And that's, quote, the director says, Based upon Officer Hinman's record, he would have been entitled to receive retention pay on April 10, 2010, but he was not actually paid the retention pay until November 20, 2011. So there's no question that once the issue was posited to the director of the agency, he made an administrative decision saying, Yes, we have the records. Yes, those records show that all police officers in this sector got retention pay. We are now, based upon that review, going to pay you. So there's a clear question of, first, when did the retention policy go into effect? Why isn't it just a situation where he made a mistake, and the actual records now that we have them in front of us show that there was no authorization before November 4? Fair question, Your Honor. The reason why you don't have all the records in front of you is because the trial court denied me and the plaintiff any right to conduct discovery at the time the 12B1 and 12B6 were pending. Instead, he said, I would like the agency to produce various described documents, which were insufficient to establish the issue. The issue being, was there a policy in effect, a VA policy, at the time in 2010, and if so, was he entitled to payment? That request for that document, and it was a very specific request, please just provide the plaintiff from 2008 to the present, those officers who received retention pay. Nothing more, nothing less. Instead, we have an incomplete record because the court said, we're not going to allow you to do that. We're going to allow the agency to produce half a loaf from 2-11 forward, and your request and your suggestion that that policy existed in 2008, all the way through this period of time, existed. We're not going to let you find that out. And that's the second part of our argument in this case, which was the conversion of this case basically by the court from a motion to dismiss to really a summary disposition. And I think the case, we spent a lot of time on a brief talking about 12D and a requirement once a trial court decides to move into extraneous evidence outside the pleadings and effectively relies on those extraneous documents or partial evidence from other than the pleadings, that the plaintiff is entitled to full discovery at that point. Can I ask you a question? You rely on this July 22, 2015 letter, right? From the director, yes. Right. So in order to get a money mandating statute, at some level from the statute or on down, permissive language has to be translated into some kind of mandatory language. I thought you said a moment ago, you used the word of entitlement, that this July 22, 2015 letter says you're entitled. You were entitled to it. It doesn't say that, does it? Yes, it does. It says you are eligible for it. It says entitled. You will become entitled. That's it. So where is it? Appendix 25. Right. I'm looking at where in the letter. It says would have become. Would have become. Entitled. Right. Eligible. Eligible. I'm sorry? Eligible is different from entitled. Entitled at least might suggest something mandatory. Eligible doesn't. Eligible. You're correct. Excuse me, Your Honor. It is the term eligible. Right. So that's what I guess what I was asking about. Okay. That this doesn't seem to me to make the crucial jump from permissive discretionary language to entitlement language. Fair question. The issue that the courts have all looked at is when we deal with the question of may or an authorizing but not mandating statute is, has there been an active or actual decision by that agency to implement the retention pay? Once that action has occurred and is alleged to have occurred as in this complaint, these states, the director of that facility, implemented that plan, OPM's plan saying you can have this retention. Once that occurs, there's no more discretion or may argument left. Now, if that hadn't been implemented and wasn't longstanding since 2008 all the way through the period in question, then there's a good argument that it would have been a may issue. But when we approach these facts, we approach these facts from the decision making of a director who decided, at least as early as 2008, to implement the retention pay policies in his own policy under 5754. So it really is kind of a cloud saying this may or may not occur. It did occur. Wait. I'm sorry. In this November 4 letter, he says, we are requesting approval for a 10% group retention incentive for Heinz Police Officers Series GS-083. That includes your client, right? Yes. Why isn't that determinative of that was the authorization that you have to rely on and that that was for paid periods for which he actually got compensation? He received his compensation beginning in November 11. The question is, was he entitled to it before? That's answered by only if, yes he is, only if he can show that the retention policy or retention plan was adopted by that agency from 2008 on. If he can show that evidence, there's no question. In fact, it's a summary judgment for the plan. There is no defense. Once you adopt the policy, you implement it at your agency, you've made that discretionary determination to implement the policy. In this case, there were two requirements, 90 days of continuous employment and your completion of a training. In this case, Hinman completed his training, continued 90 days of continuous employment, and made his demand. That's when the letter from the director comes forward and said, we will compute the amount we owe you. There was no argument about it. There was no contest about it when the director looked at it. He said, our records reflect you should have been receiving this effective April 1. He makes that determination. It's a clear admission, but even in the absence of an admission, the evidence shows, in fact, as our supplemental request indicates, even in 2008 that retention was paid to each and every officer at the Heinz VA. So as I sit here before you today, Mr. Hinman is the only officer I'm aware of from 2008 to the present that wasn't paid his retention pay. And I think, Your Honor, the case of Roberts v. United States really deals with this case, I think, straight on. And that's the fair interpretation rule. It says where you can show that an agency, and in this case an OPM reg, provides for the payment of retention, and that that is a fairly straightforward interpretation of not only their actions, but the VA handbook provisions that they implemented, implemented specifically to provide 5754 pay, retention pay. Once that occurs, then there's a fair interpretation that the plaintiff is entitled to a trial on the merits. This case really is a confusion in that the court of claims didn't limit itself to a jurisdictional finding. It actually decided the merits of the case. And that's why the plaintiff is entitled not only to have this reversed and remanded, but an opportunity to show on record the actual pay period 2008 to the present. With that, I'll reserve my time. Thank you, counsel. We'll save your rebuttal time. Mr. McBurney. Good morning, Your Honors. May it please the Court. Jimmy McBurney on behalf of the United States. I think Your Honors hit it straight on. This really is a simple statutory interpretation question. And the question before the Court is whether section... No, it's not a simple statutory interpretation question. The question is whether, under Roberts, there was an authorization under the statute to make these payments before November of 2011. That's really a factual issue. Well, I would slightly disagree with that characterization. I think it's statutory interpretation in the sense that the Court needs to look at the statute, section 5754, in conjunction with the implementing regulations and any policies that might have been in place. Where I would slightly disagree with your characterization, Judge Dyke, is that even if the implementation was in place at the time, which the record is quite clear it was not, one would still have to look at that implementation and determine whether, under the rules set forth in Roberts, it was such a policy that once certain conditions are met, the agency then mandates payment. Why is it so clear that it was not in place at the time? Because he has submitted a letter from 2008 which seems to address incentive payments for this class of officers and says that they will receive the payments. So, I mean, it's a little mysterious as to what happened here because in 2008 they seem to be getting the incentive payments and then there's this other authorization of November 2011 which provides for incentive payments. Is this done on a yearly basis? How does one reconcile these two pieces of evidence? Sure, so there's a simple answer to that. First, I'll note that, and we talked about this in the briefs, the letter is unauthenticated. We have some concerns about whether it even should be considered. But what appendix page should I be looking at? The letter is 34. But putting aside the concerns about whether we should even be looking at that letter, there's a simple explanation from the face of the letter, just taking it at face value, which is that the letter is referring to an individualized incentive award. The statute talks about two types of potential retention incentives. There's individual retention incentives, which are up to a maximum of 25 percent, and then there's another provision for group retention incentive, which is up to a maximum of 10 percent. Mr. Hinman claims entitlement to a group retention incentive, and that is the authorization that we presented at the request of the trial judge showing that that went into effect in November of 2011. The unauthenticated letter presented by Mr. Hinman from 2008 is referring to an individualized retention incentive, and we can see that from the fact that it refers to a retention incentive of 20 percent, which is obviously above the 10 percent cap for group retention incentives. So whether there is some sort of authorization in place in 2008 for individualized retention incentives is entirely irrelevant to the question at hand in this case, which is whether Mr. Hinman was entitled to a group retention incentive. So I think that's the answer to Your Honor's question. Well, I don't know. The August 14, 2008 letter doesn't read to me like an individual incentive award. It looks very much like a group incentive award. I wouldn't read it that way, Your Honor. Congratulations on your selection and position of police officer. GSO 83-6, the salary includes a retention incentive. Right. And I think, you know, the way we know, again, that that must be individualized is because it goes on to state that the incentive is 20 percent, and the statute explicitly caps group retention incentives at 10 percent. Individualized retention incentives are capped at 25 percent, so that letter would be consistent with an individualized retention incentive. So we do think the record is quite clear, and there's no real factual dispute about the fact that there wasn't a retention incentive in place for a group retention incentive at the time at issue. That being said, I would also note that even if there were, that would not, in this case under these facts, change the discretionary nature of Section 5754 as implemented in the regulations, because as we talked about in our briefs, as we see in the regulations from OPM, as we see in the DA handbook, what's set forth is absolute discretion for the agency. If you look at the November 2011 authorization, there's nothing discretionary about that. People who were receiving compensation after that period were entitled to the retention bonus, right? I think there's some question about that. Again, that's not this case because that wasn't even in effect as of the time period at issue. But our view would be when we look at the regulations that talk about, look, at any time the agency has the discretion to terminate the retention incentive, even if the conditions that gave rise to it don't change, and in fact the language that a termination of a retention incentive or failure to receive it is not appealable or grievable, to us, even under the standards of Roberts, that still retains a level of discretion. But even if Your Honor disagrees with that, the fact remains that the retention incentive did not go into place for group LEOs until November of 2011, which, and as soon as it did, Mr. Hinman did, in fact, begin receiving that retention incentive. And in this case, I think that's the beginning and the end of the matter. What did Judge Braden order the government to produce? Judge Braden ordered the government to produce several items, and those included, I'm looking for her exact language, but they included any retention incentive agreement in place, which obviously we produced. In fact, if I look at them, I have it right here. Did she require the production of any decisions to award group retention incentives? No, she did not. Her request was for the hospital's group authorization of retention bonuses for LEOs, any retention service agreement signed by plaintiff. What page is this at? I don't think this is in the appendix, unfortunately. It's docket 17 on the Court of Federal Claims docket, and unfortunately it did not make it into the appendix. But it is on the first page of docket 17, and she also asked for any relevant documents concerning the VA hospital's retention bonus policy. She did not ask for any other individuals who had received retention incentive for the sole reason that that would be entirely irrelevant. I guess that's not my question. I'm sorry. My question is, did she direct the government to produce any documents like the November 4th document, 2011 document? Yes, in the sense that she had asked the government to produce any VA group authorization for retention incentives, and so that would have included any document like the November 4th document, yes, Your Honor. And we produced all documents that existed in that category, and again, there was nothing earlier than that document that existed. With regards to the discovery request that was asked for by plaintiffs, documents evidencing other individuals who may have received discretionary retention bonuses was completely irrelevant to the jurisdictional question before the court. Now, there might be some sort of argument about whether that could have been relevant to a merits determination, but again, that's not what the court ruled on. The court ruled solely on jurisdictional grounds, and the question there is whether there was something mandating the government to provide these bonuses to individuals who met specified standards set forth by the agency. And regardless of whether that circumstance existed as of November of 2011, it certainly was not the case during the time period at issue that Mr. Hinman is claiming unpaid pay for. I realize it's not an issue here, but since you brought it up, is your position about the November 2011 policy not qualifying as one that would be money mandating consistent or inconsistent with Roberts and other cases where we have found certain kinds of agency implementations of discretionary language in statutes to qualify? It would be consistent, Your Honor. And again, we haven't taken a firm position on whether that authorization would or would not mandate payment because that's not the facts of this case. But the important principle under Roberts is when you have an authorization that says, okay, anybody who meets standard A, B, and C is entitled to this payment, that can render it money mandating. If you have an authorization that says, okay, people who meet these particular standards may be entitled to, well, may be eligible for a retention incentive at the further discretion of the agency, our view is even under Roberts, that's not money mandating because there's still discretion. Individuals... Do you think the November 2011 is in that second category? I believe it is. I would have to look at it more carefully if that was the case. I don't want to take a firm position there, but I don't think that it has the type of language we saw in Roberts where it was very clear that if you meet this category, you are entitled to the payment. Again, though, I haven't looked at it that closely because that's not this case. I can't imagine why you didn't include this document in the appendix. It's a fair question, Your Honor. If there are not any further questions, then I would ask for affirmance of the district court's decision. Thank you, Your Honors. Mr. Bridge has some rebuttal time, three and a half minutes. Thank you, Your Honor. Getting back to the statutory authority, we've already looked at 5754, but I wanted to advise the court that 5305, 5 U.S.C. 5305 is pertinent here because it actually makes retention pay a part of the basic rate of pay for the officer. It's incorporated as a basic rate of pay. So, in other words, when you're looking for statutory authority, quite apart from the discretion that's already been exercised that recognizes statutorily that that's your paycheck, and even though it's an incentive, it becomes part of your basic pay. The case of Roberts, I would submit to the court respectively that that stands for the proposition I'm arguing. Once there has been a discretion, there is nothing further to assess other than did the applicant, or in this case the law enforcement officer, meet the conditions preceded. Once he meets those conditions preceding the 90 days in the law enforcement training, there's no other discretion left. Hence, I would submit to the court that having been allowed to go through and obtain those documents showing who was and was not paid for 2008 and forward, every single officer that I'm aware of was paid. And whether you call it group or individual or otherwise, every single officer that I'm aware of, there weren't some officers paid and some officers not. They were all in the same group, they were all LEOs, and they were all subject to a retention. I think the plaintiff clearly was entitled to explore that at the court of claims, and rather than face a summary disposition, I think 12D is clear that we were entitled to fully prepare ourselves to respond to essentially a summary disposition of the case. With that, I thank the courts for the time. Thank you, counsel. We'll take the case on revisement.